

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00477-CV

———————————————

MAX CURRY, JR. AND ANGELA SNEED-CURRY, AS NEXT FRIENDS OF
C.J.C., A MINOR, Appellants

V.

SHAWN DALLY, BRIAN WHITE, NATASA WROBLSKI, AND KATIE
GORDON, Appellees

On Appeal from the 348th District Court
Tarrant County, Texas
Trial Court No. 348-363176-25

Before Kerr, Bassel, and Womack
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

In this appeal from the granting of four Mansfield Independent School District employees' plea to the jurisdiction, appellants—Max Curry, Jr. and Angela Sneed-Curry, acting as next friends for their child Jerry,[1] an MISD student—contend that they pleaded sufficient ultra vires claims against Shawn Dally, Brian White, Natasa Wroblski, and Katie Gordon (the Employees). We affirm the dismissal of the Currys' claims against White, Wroblski, and Gordon and one of their claims against Dally, but we reverse the dismissal of the Currys' remaining claims against Dally.

## Procedural Background

The Currys filed a declaratory-judgment suit against Dally, White, Wroblski, and MISD school-resource officer Jonathan Allen claiming that they had acted outside their authority and had failed to comply with ministerial duties in disciplining and restraining Jerry at school. The Currys also named Gordon in their petition's caption and referred to her in their recitation of events, but they did not include her in their definition of Defendants and did not bring any specific claims against her. Nevertheless, Gordon—along with the other Employees—filed an answer and a plea to the jurisdiction. After ordering a response from the Currys and considering that response, the trial court granted the plea to the jurisdiction and dismissed the Currys'

---

[1]We use an alias to refer to their child. *See generally* Tex. R. App. P. 9.9(a)(3).

claims against the Employees with prejudice. Allen, whom the Currys had never served and who hadn't answered, was not named in the dismissal order.

On the thirtieth day after the trial court signed the dismissal order, the Currys filed a notice of appeal. Before the appellate record was filed, we questioned our jurisdiction over the appeal because the dismissal order appeared to be interlocutory by not disposing of the claims against Allen. In their response, the Currys argued that the dismissal order was final under *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962), because they had constructively abandoned their claims against Allen by proceeding without serving him. In light of the Currys' response, we continued the appeal.[2]

## Appeal Timely

As a preliminary matter, the Employees contend that we should dismiss this appeal because it is from an interlocutory order and was not timely filed.

But if the dismissal order is final rather than interlocutory, then the notice of appeal was timely filed. *See* Tex. R. App. P. 26.1. To determine whether a disposition is final when the judgment expressly disposes of some, but not all, defendants, we consider whether the only remaining defendants have not been served or answered; if nothing in the record indicates that the plaintiff expected to obtain service on the unserved defendants, then the disposition is final. *See, e.g., DFW Inv. Props. Enters.,*

---

[2]The Employees did not respond to the Currys' *Youngstown* argument.

*LLC v. Aguinaga*, No. 02-22-00501-CV, 2023 WL 4114834, at *2 (Tex. App.—Fort Worth June 22, 2023, no pet.).

Here, the appellate record is silent about the Currys' attempts, if any, to serve Allen. They did not serve him with their notice of appeal, nor did they list him as a party in their docketing statement. And they assured this court that they had constructively abandoned their claims against him. Under these circumstances, we conclude that nothing shows that the Currys ever expected to serve Allen; the dismissal order is thus final, and the Currys' notice of appeal was timely filed. *See, e.g.*, *Williams v. Stevens*, No. 05-22-00440-CV, 2023 WL 5621835, at *2–3 (Tex. App.—Dallas Aug. 31, 2023, no pet.); *Wedgeworth v. City of Amarillo*, No. 07-15-00301-CV, 2016 WL 2941123, at *2 (Tex. App.—Amarillo May 17, 2016, pet. denied).[3] We thus consider the Currys' complaints on the merits.

**Propriety of Dismissal**

Although the Currys list five issues, their complaints all pertain to the propriety of their claims' dismissal with prejudice. Each issue argues that the trial court erred by

---

[3]Even if the dismissal order were interlocutory, we would have jurisdiction over the appeal. Because the Currys' notice of appeal was filed within fifteen days after the interlocutory-appeal due date—August 31, 2025—its filing would have served as an implied motion to extend. *See* Tex. R. App. P. 26.1(b), 26.3; *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997); *Childress v. Travelers Indem. Co.*, No. 03-21-00579-CV, 2022 WL 2542005, at *2 (Tex. App.—Austin July 8, 2022, no pet.). And the Currys' belief in the order's finality—even if mistaken—would suffice for us to grant such an implied motion. *See Garcia v. Kastner Farms, Inc.*, 774 S.W.2d 668, 670 (Tex. 1989).

determining that they did not sufficiently plead an ultra vires claim. We therefore will not address each issue individually.

**Standard of review and applicable law**

We review de novo a trial court's jurisdictional ruling. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

When a defendant challenges whether the plaintiff has alleged facts sufficient to waive immunity, as the Employees have here, we liberally construe the pleadings in the plaintiff's favor, considering all factual assertions to be true and looking to the plaintiff's intent.[4] *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). Even under that liberal construction, the plaintiffs must demonstrate, through the facts alleged in their live pleading, that immunity from suit has been waived. *Doe v. City of Fort Worth*, 646 S.W.3d 889, 897 (Tex. App.—Fort Worth 2022, no pet.); *see Walker Cnty. ESD No. 3 v. City of Huntsville*, 658 S.W.3d 807, 816 (Tex. App.—Waco 2022, pet. denied) (explaining that court must apply facts alleged in pleadings to relevant statutory provisions to determine whether plaintiff pleaded ultra vires claim). Conclusory allegations alone will not suffice. *See Casper v. Tex. Woman's Univ.*, No. 02-22-00345-CV, 2023 WL 5617129, at *14 (Tex. App.—Fort Worth Aug. 31, 2023, pet. denied).

---

[4]Although the Employees offered an alternate version of events in their plea to the jurisdiction, they did not offer any evidence in support of their plea. *Cf. City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (explaining that when trial court considers jurisdictional evidence, it must determine whether that evidence—when viewed in the light most favorable to the nonmovant—raises a fact issue).

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be allowed to amend unless the pleadings are incurably defective. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Miranda*, 133 S.W.3d at 226–27.

School-district employees sued in their official capacities do not have immunity from suit for properly pleaded ultra vires claims.[5] *Arlington ISD v. Williams*, Nos. 02-23-00142-CV, 02-23-00155-CV, 2023 WL 8643040, at *3 & n.3 (Tex. App.— Fort Worth Dec. 14, 2023, no pet.); *see Franka v. Velasquez*, 332 S.W.3d 367, 382– 83 (Tex. 2011) (explaining that ultra vires claims may be brought against government employees). A valid ultra vires claim must show that an employee failed to perform a purely ministerial act or acted outside the employee's discretionary authority. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022); *see Hou. Belt & Terminal Ry. v. City of Hou.*, 487 S.W.3d 154, 158 (Tex. 2016). Although school-district employees generally have

---

[5]Although immunity from suit bars jurisdiction, immunity from liability—a separate principle—must be pleaded. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) ("Immunity from liability protects the state from judgment even if the Legislature has expressly consented to the suit."). Immunity from liability does not affect jurisdiction and may not be raised in a plea to the jurisdiction. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Harrell v. Smith*, No. 05-25-01511-CV, 2026 WL 1040793, at *6 (Tex. App.—Dallas Apr. 16, 2026, no pet. h.) (explaining that Education Code Section 22.0511(a), which provides that a school-district employee is immune from liability for discretionary acts—other than using excessive force during disciplining students and negligently causing them bodily injury—cannot justify a dismissal for want of jurisdiction).

6

no discretion to misinterpret the law, they are entitled to immunity even if they erroneously exercised their discretion. *Jones*, 646 S.W.3d at 325.

**The petition's allegations**

The Currys alleged that at school one day Jerry, who has a 504 plan,[6] became upset and—according to his plan—went to the office to calm down. They claim that Dally then "chased" Jerry to the office, argued with him about his 504 plan, and denied him the right to remain in the office.[7] The Currys allege that when Jerry returned to the classroom, Dally and White continued questioning him about going to the office without permission. Dally and Gordon then allegedly summoned Allen, the school's resource officer, to "intimidate [Jerry] into following [their] instructions."[8]

---

[6]A 504 plan is a written agreement between a school system and a student with a disability, ensuring that the student receives necessary accommodations to access education. *Mitchell v. Young*, No. 02-24-00292-CV, 2025 WL 1909327, at *2 n.7 (Tex. App.—Fort Worth July 10, 2025, no pet.).

[7]In contrast, the Employees allege in their brief—without citation to the appellate record—that Jerry was allowed "several breaks" in the office after he refused "to sit in his assigned seat during class" and that he returned to class willingly "[f]ollowing his final scheduled break."

[8]The Employees allege in their brief—again without citation to the record—that Jerry "refused to leave the classroom and ultimately chose to sit on the floor in protest. In response, a campus police officer was called to assist school staff in addressing the situation in a safe and controlled manner."

According to the petition, Allen began interacting with Jerry—taking away his desk and picking Jerry up off the floor.[9] Allen and Dally then "carried [Jerry] down a hall"; when Jerry tried to get away from them by grabbing a support pole, Allen allegedly pushed Jerry's head into the wall and bent his arm back. The Currys claim that Allen—and possibly Dally[10]—then made Jerry sit in a wheelchair until Angela picked him up from school.[11]

According to the Currys, Angela contacted Wroblski "multiple times expressing concerns about the events" and about Jerry's "safety on campus," but none of the Employees have, "upon information and belief," made "a report of abuse" of Jerry "as required by law."

The petition alleged (1) that Allen and Dally used statutorily prohibited aversive techniques and corporal punishment by intentionally inflicting pain on Jerry and

---

[9]According to the Employees' brief, Jerry refused to get off the floor after staff had calmly and repeatedly offered him three choices: go to enrichment class, go to the office, or go to in-school suspension. When Jerry refused, they "gently took hold of [Jerry's] arms to assist him in leaving the classroom," and Jerry "responded by scratching, hitting, kicking, and attempting to bite the staff members, creating a situation that required the campus police officer to place him in a restraint to ensure everyone's safety."

[10]In one part of their petition, the Currys allege only that Allen forced Jerry to sit in wheelchair. But in their application of law to the facts, they allege that both Dally and Allen did so.

[11]The Employees state in their brief that Jerry "continued to physically struggle and assault both the staff member and the campus police officer, including repeatedly headbutting the officer in the face," and that the campus officer was able to "convince" Jerry to sit in a wheelchair when he finally calmed down.

(2) used aversive techniques by placing him in a time out "that precluded him from being able to be involved in and progress appropriately in the required curriculum." The Currys also alleged that Allen and Dally used statutorily prohibited restraint and time-out techniques by carrying Jerry down the hallway and forcing him to sit in a wheelchair "in a manner [in]consistent with professionally accepted practices and standards of student discipline[,] techniques for behavior management, and relevant health and safety standards."

The Currys further claimed that Allen and Dally abused Jerry by causing him physical injuries when carrying him down the hall and that Dally abused Jerry "when he negligently or willfully used the infliction of injury, unreasonable confinement, intimidation, or cruel punishment with resulting physical or emotional harm or pain to" Jerry. They alleged that Dally, White, and Wroblski all failed to properly report this abuse.

The Currys sought declarations that Jerry "has the right to be free from impermissible time-out, impermissible restraint, aversive techniques, corporal punishment[,] and abuse at school" and "the right to have any suspected abuse on him being reported in accordance with the law."

**Reporting omission does not state ultra vires claim**

We first address the Currys' claim that the Employees failed to report Allen's and Dally's "abuse" of Jerry.

Family Code Section 261.101(a) provides that "[a] person having reasonable cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by" subchapter B of Chapter 261. Subsection (b) provides a timeframe in which a "professional"—a person licensed or certified by the State, including teachers—must report reasonably suspected abuse or neglect. Tex. Fam. Code § 261.101(b), (c). The definition of abuse contains a lengthy acts-and-omissions list, among them

> (C) physical injury that results in substantial harm to the child, or the genuine threat of substantial harm from physical injury to the child, including an injury that is at variance with the history or explanation given and excluding an accident or reasonable discipline by a parent, guardian, or managing or possessory conservator that does not expose the child to a substantial risk of harm; [and]
>
> (D) failure to make a reasonable effort to prevent an action by another person that results in physical injury that results in substantial harm to the child . . . .

*Id.* § 261.001(1)(C), (D). This reporting requirement—upon reasonable cause for belief—is mandatory and, for professionals, nondelegable. *Id.* § 261.101(b).

But Section 261.101 does not create a private cause of action. *See Doe v. S & S Consol. ISD*, 149 F.Supp.2d 274, 299 (E.D. Tex. 2001) (relying on *Perry v. S.N.*,

10

973 S.W.2d 301, 309 (Tex. 1998)), *aff'd*, 309 F.3d 307 (5th Cir. 2002). Instead, Section 261.109 makes the failure to report a criminal offense, enforceable by appropriate authorities. *See* Tex. Fam. Code § 261.109; *Dunn v. Garcia*, No. 01-21-00100-CV, 2022 WL 2347739, at *11 (Tex. App.—Houston [1st Dist.] June 30, 2022, no pet.).

Therefore, we conclude that the Currys' failure-to-report allegations do not support an ultra vires claim against any of the Employees, nor can the Currys amend their pleadings to state such a claim.[12] *See Leonard v. City of Burkburnett*, No. 02-22-00266-CV, 2023 WL 8940816, at *23 (Tex. App.—Fort Worth Dec. 28, 2023, no pet.). We overrule the parts of their issues challenging the dismissal of these claims.

**Corporal-punishment allegation does not state ultra vires claim but can be repleaded**

We next consider whether the Currys' allegation that Dally improperly subjected Jerry to corporal punishment constitutes a valid ultra vires claim. The only concrete actions about which the Currys complain are Dally's summoning Allen to help get Jerry to attend music class, Dally's assisting Allen in making Jerry sit in a wheelchair, and Dally's helping Allen carry Jerry to the office. Importantly, they do

---

[12]Although Human Resources Code Section 48.051 also provides for mandatory reporting of the abuse of "a person with a disability," it does not apply to a minor whose "disabilities of minority" have not yet been removed. Tex. Hum. Res. Code §§ 48.002(a)(8), 48.051. Thus, Section 48.051 cannot be a basis for an ultra vires claim here.

11

not describe how Dally allegedly assisted Allen in carrying Jerry or in making Jerry sit in a wheelchair.

Education Code Section 37.0011 defines corporal punishment as "the deliberate infliction of physical pain by hitting, paddling, spanking, slapping, or any other physical force used as a means of discipline" and expressly excludes the use of restraint, defined as "the use of physical force or a mechanical device to significantly restrict the free movement of all or a portion of a student's body." Tex. Educ. Code §§ 37.0011(a)(2), 37.0021(b)(1).

According to the Education Code, a school district may adopt a policy allowing corporal punishment. *Id.* § 37.0011(b). But the Currys alleged that MISD policy strictly prohibits corporal punishment: "The Board prohibits the use of corporal punishment in the District. Students shall not be spanked, paddled, or subjected to other physical force as a means of discipline for violations of the Student Code of Conduct. MANSFIELD ISD FO(LOCAL)-X."[13]

The Currys did not allege that Dally hit, paddled, spanked, or slapped Jerry. And even assuming that Dally's helping carry Jerry suffices as "other physical force used as a means of discipline," they alleged no facts that would show that Dally deliberately inflicted physical pain on Jerry as discipline.[14] Their only specific

---

[13]The appellate record does not include a copy of the referenced document.

[14]Although the Currys stated generally that Dally and Allen "deliberately inflicted physical pain on [Jerry] by using physical force used as a means of discipline,"

12

allegation is that Allen—not Dally—pushed Jerry's head into the wall and bent his arm back in response to Jerry's grabbing a support pole. We conclude that, at the most, the Currys pleaded that Dally assisted Allen in restraining Jerry by carrying him down the hall; thus, they did not plead sufficient facts to state an ultra vires claim for using unauthorized corporal punishment. But because they could have pleaded specific facts showing that Dally's method, purpose, or both in carrying Jerry was to deliberately inflict pain as discipline, they should have been given the chance to replead this claim. *See, e.g.*, *City of Highland Vill. v. Deines*, No. 02-24-00431-CV, 2025 WL 494695, at *8 (Tex. App.—Fort Worth Feb. 13, 2025, no pet.). We therefore sustain the parts of their issues challenging the dismissal of this claim.

**Restraint and time-out allegations plead ultra vires claim**

The Currys also alleged that by carrying Jerry down the hall and forcing him to sit in a wheelchair, Dally impermissibly restrained Jerry and placed him in a time-out.

Education Code Section 37.0021(d) requires the state to adopt rules specifying how school-district employees may restrain or give time-outs to students receiving special-education services. Tex. Educ. Code § 37.0021(d). These rules prohibit a

---

this allegation is merely conclusory and does not suffice to plead that Dally's actions constituted corporal punishment. *See, e.g.*, *Sonnenschein v. Rivera*, No. 03-21-00602-CV, 2023 WL 8263387, at *6 (Tex. App.—Austin Nov. 30, 2023, pet. denied); *City of Floresville v. Starnes Inv. Grp., LLC*, 502 S.W.3d 859, 868 (Tex. App.—San Antonio 2016, no pet.).

school-district employee from using restraint except in an emergency and subject to the following caveats:

> • The restraint "must be limited to the use of such reasonable force as is necessary to address the emergency."
>
> • The restraint "must be discontinued at the point at which the emergency no longer exists."
>
> • The restraint "must be implemented in such a way as to protect the health and safety of the student and others."
>
> • And the restraint "must not deprive the student of basic human necessities."

19 Tex. Admin. Code pt. 2 ch. 89 subch. AA § 89.1053(c) (2024). An emergency is "a situation in which a student's behavior poses a threat of: (A) imminent, serious physical harm to the student or others; or (B) imminent, serious property destruction." *Id.* § 89.1053(b)(1).

The Employees argue that the Currys did not plead a valid ultra vires claim because an employee who uses a restraint has discretion to determine whether the situation prompting the restraint is an emergency. But the Currys' petition alleges that Dally's and Allen's carrying Jerry was in response to his refusing to attend music class; nothing in their pleading alleges facts raising a reasonable inference that Jerry's behavior posed "an imminent, serious physical harm" to himself or others or that his behavior could have resulted in imminent, serious property destruction. Thus, according to the Currys' pleadings, Dally had no discretion to restrain Jerry. And assuming that Dally's allegedly forcing Jerry to sit in a wheelchair constitutes using a

14

"mechanical device to significantly restrict the free movement of all or a portion of" Jerry's body, then it also was an improper restraint. Thus, we conclude that the Currys at least pleaded a valid ultra vires claim that Dally improperly restrained Jerry. *See Leonard*, 2023 WL 8940816, at *20.

Under the same rules section governing restraints, a time-out is "a behavior management technique in which, to provide a student with an opportunity to regain self-control, the student is separated from other students for a limited period in" an unlocked setting that "is not physically blocked by furniture, a closed door held shut from the outside, or another inanimate object." 19 Tex. Admin. Code pt. 2 ch. 89 subch. AA § 89.1053(b)(3) (2024). A school-district employee may not use physical force or its threat to place a student in time-out, and a "[t]ime-out may only be used in conjunction with an array of positive behavior intervention strategies and techniques." *Id.* § 89.1053(g). Additionally, the time-out "must not be implemented in a fashion that precludes the ability of the student to be involved in and progress in the general curriculum and advance appropriately toward attaining the annual goals specified in the student's" plan. *Id.*

The Currys alleged that Dally assisted in physically removing Jerry from the classroom; nothing in their allegations suggests that any staff member used a behavior interaction other than the alleged physical restraint. Accordingly, the Currys at least pleaded that Dally assisted in putting Jerry in an unauthorized time-out. *See Leonard*, 2023 WL 8940816, at *20.

15

We sustain the Currys' issue to the extent they complain about this claim.

**Aversive-technique allegation pleads ultra vires claim**

Finally, the Currys alleged that Dally, along with Allen, used impermissible aversive techniques with Jerry.

The Education Code prohibits a school-district employee from applying an "aversive technique," broadly defined as "a technique or intervention that is intended to reduce the likelihood of a behavior reoccurring by intentionally inflicting on a student significant physical or emotional discomfort or pain." Tex. Educ. Code § 37.0023(a), (b).[15] Included within this definition are "a technique or intervention that"

- "is designed to or likely to cause physical pain, other than an intervention or technique permitted under Section 37.0011 [the corporal-punishment statute],"

- "notwithstanding Section 37.0011, is designed to or likely to cause physical pain through the use of electric shock or any procedure that involves the use of pressure points or joint locks,"

- "denies adequate sleep, air, food, water, shelter, bedding, physical comfort, supervision, or access to a restroom facility," and

- "constitutes a use of timeout that precludes the student from being able to be involved in and progress appropriately in the required

---

[15]The Employees contend that the Texas Supreme Court has determined that this statute is purely discretionary. *See Downing v. Brown*, 935 S.W.2d 112, 113–14 (Tex. 1996). But in *Downing* the Court did not construe Section 37.0023; instead, it considered whether a teacher who was sued for failing to create and post a discipline plan as required only by district policy was immune from liability according to Education Code Section 22.051(a). *Id.* Thus, *Downing* is inapposite.

curriculum and, if applicable, toward the annual goals included in the student's individualized education program, including isolating the student by the use of physical barriers."

*Id.* § 37.0023(a)(1)–(2), (4), (12).

The Currys alleged that, while carrying Jerry, Dally and Allen "used procedures that involved the use of pressure points or joint locks." Although they did not specifically describe how Dally and Allen allegedly used pressure points or joint locks, this allegation is a sufficient statement of fact to at least plead a claim that Dally used an unauthorized aversive technique. *See Leonard*, 2023 WL 8940816, at *20. Accordingly, we sustain the Currys' issues to the extent they complain about this claim.

## Conclusion

Because we conclude that the trial court properly dismissed the failure-to-report claims against the Employees, we affirm that part of the dismissal order. But because the corporal-punishment ultra vires claims against Dally can possibly be repleaded, and because the remaining ultra vires claims against Dally were properly pleaded, we reverse the trial court's dismissal order as to those claims only, and we remand this case for further proceedings.

                                        /s/ Elizabeth Kerr
                                        Elizabeth Kerr
                                        Justice

Delivered:  May 14, 2026